Filed 1/10/23 P. v. Brown CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ZACHARY RUNNINGWOLF BROWN,<br><br>    Defendant and Appellant. | A163445<br><br>(Alameda County Super. Ct. No. 20-CR0139999) |

Zachary Runningwolf Brown[1] appeals from a judgment of conviction and sentence imposed after a jury found him guilty of multiple counts of vandalism (Pen. Code, § 594, subd. (a)).  His attorney has filed a brief seeking our independent review of the appellate record, pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), to determine whether there is any arguable issue on appeal.  Appellant has filed a supplemental brief.  We find no arguable issue and affirm.

## I. FACTS AND PROCEDURAL HISTORY

A second amended information charged appellant with two counts of felony vandalism (Pen. Code, § 594, subd. (a)), each with a hate crime

---

[1]    Appellant was charged as Freddie Lee Smith, "aka Zachary Brown, Zachary Runningwolf."  He filed his appeal in the name of Zachary Runningwolf Brown.

allegation (§ 422.55/422.75, subd. (a)), as to incidents on October 4 and 17, 2020; and one count of misdemeanor vandalism (§ 594, subd. (a)) as to an incident on August 1, 2020.[2]  The matter was tried to a jury.

A.  Evidence

1.  Incidents at Temple Sinai

Temple Sinai is a Jewish religious institution in Oakland, California. Muhammad Mir was an event and facilities coordinator for Temple Sinai and was responsible for, among other things, monitoring and maintaining the temple's surveillance system.

On August 3, 2020, Mir discovered graffiti on the corner of Webster and 28th Street on the ground about 15–20 feet away from the sanctuary's front door.  The text said, among things, "bye, bye, evil, evil Jews."  Video footage from surveillance cameras showed that the graffiti was placed on August 1, 2020.  Mir reported the graffiti to the Oakland Police Department, senior staff at the temple, and the City of Oakland, who removed the graffiti.

On October 5, 2020, Mir discovered graffiti on the wooden doors of the temple's sanctuary entrance at the corner of Webster and 28th Street.  On one door, the word "Jews" was drawn or painted over an engraving of the Star of David.  The letters SERA were written in the middle of four other wooden doors.  Mir checked the video surveillance and discovered that this incident occurred on October 4, 2020.

On October 19, 2020, Mir again discovered graffiti on the wooden doors of the temple's sanctuary entrance at the corner of Webster and 28th Street. Mir described the graffiti as a swastika painted over the Star of David. Surveillance footage indicated that this incident occurred on October 17 or

---

[2]    Unless otherwise indicated, statutory references are to the Penal Code.

18, 2020. Mir reported the graffiti to police as anti-Semetic, although the alleged swastika was drawn in the "opposite direction."

Terrie Goren, executive director at the temple, described the impact the symbols and graffitied words had on the synagogue and its members. The sight of a swastika brings feelings of vulnerability, fear, and hate "all around." The Star of David is a holy symbol, and seeing a swastika over the Star of David "drills right to your core just how hateful that would be." Whether the swastika is forward or backward, Goren testified, the message is clear.

Other witnesses testified that the cost to repair the sidewalk was $359 and the cost to repair the irreplaceable temple doors—which were over a hundred years old, solid oak, and hand-carved—was $9,050.

2. Events Leading to Appellant's Arrest

Oakland Police Officer Meeran Gichki was dispatched to Temple Sinai on October 19, 2020, to investigate reports of vandalism. He collected and reviewed the surveillance video pertaining to all three incidents, obtained statements from Mir, and observed the temple doors. He also took still images from the surveillance video and circulated them to other officers to identify the suspect. Sergeant David Burke, Officer Roberto Garcia, and Officer Salvador Gonzalez, familiar with appellant from previous contacts, identified appellant as the suspect. Garcia, for example, recognized appellant due to the shape of his nose and his hunched over shoulders, long hair, and medium to dark skin tone.

On October 20, 2020, Officer Gonzalez saw appellant riding a bicycle. Gonzalez identified him by his "unique hairstyle" and "facial tattoos," which were visible above his face mask. Gonzalez detained appellant and conducted

3

a search for weapons. The officer observed paint cans in appellant's bag, which looked like the bag carried by the suspect in the surveillance videos.

Inspector Joseph McNiff, an investigator for the Alameda County District Attorney's Office, reviewed the surveillance videos and saw "a very distinctive tattoo" on the suspect's right shoulder. McNiff photographed a tattoo that was on appellant's right shoulder. At trial, the court admitted the photographs into evidence over appellant's objection that they were taken against his will.

Officer Kevin Godchaux, the investigating officer who gathered reports and conducted the necessary follow-up with officers, met with appellant on October 20, 2020. Appellant was wearing a pink shirt like the one worn by the suspect in the surveillance video, and his backpack contained cans of spray paint. Officer Godchaux considered the spray-painted image to be a "Nazi swastika" because it was painted on a Jewish synagogue.

### 3. Defense Case

Appellant denied drawing a swastika. He admitted drawing a "medicine wheel" on the ground and applying tape to the Star of David. He claimed his activities were educational and that he "respectfully" placed a sticker on the temple door because he "wanted the readers of the temple to see it, absorb it about the Catholic Church and Serra, not threatening the Jews."

### B. Jury Questions

During deliberations, the jury requested transcripts of testimony from appellant, Mir, Goren, and Vickie Long (who compiled a montage of the video footage for the prosecution). The jury also requested additional video footage and inquired what to do if they were unable to reach a "unanimous conclusion" on one or more charges. After conferring with the parties, the

4

court told the jury it had already received all video footage, would be allowed readbacks of testimony rather than transcripts, and would need to narrow the readback request because readback of the entire testimony would take hours.

The jury next asked when Goren found the flyer on the door, whether anyone else walked to the temple door in the security footage between October 2 and October 5, and the timing between the video clips in the video montage compiled by Long. The jury also requested "testimony from the defendant regarding the date that the flyer . . . was placed on the temple door and any testimony describing which door the flyer was placed on."

The court reporter was unable to find any testimony responsive to the jury's questions except Long's testimony regarding the timing of the video clips, which the court permitted to be read to the jury.

The jury thereafter asked, if they were to reach a "unanimous decision regarding the charges in counts 1 and 2, but are unable to come to a unanimous decision regarding the hate crime allegations, do we just leave the hate crime allegations section blank? Does that nullify the decision on the actual charge?"

The court, after conferring with the parties and learning from the foreperson that there was a reasonable probability the jury might reach a verdict, instructed the jury to continue deliberations.

The jury later advised that several jurors were concerned that other jurors were "considering statements that the defendant made while he was questioning witnesses," and the jury believed that rehearing appellant's testimony would allow them to "consider the statements that [they were] allowed to consider." Without objection, the court granted the jury's request

5

for a readback of appellant's testimony, including the prosecutor's examination.

C. Verdict and Sentence

The jury found appellant guilty of felony vandalism (§ 594, subd. (a)) on count one on as to the incident on October 17, 2020, guilty of felony vandalism on count two as to the October 4 incident, and guilty of misdemeanor vandalism on count three as to the August 1 incident. The jury further found true the hate crime allegation (§ 422.75, subd. (a)/422.55) as to the vandalism charged in count one.

On April 16, 2021, the trial court suspended imposition of sentence and granted felony probation for two years. Appellant was ordered to serve 364 days in jail with credit for 358 days of time served (179 actual days plus 179 conduct credits).

This appeal followed. We granted appellant's motion to deem his notice of appeal timely under the "Prison Mailbox Rule."

## II. DISCUSSION

In a declaration accompanying the opening brief in this appeal, appellant's attorney represented that he wrote to appellant at his last known address, advised that a *Wende* brief would be filed in this case, and advised that appellant may personally file a supplemental brief within 30 days raising any issues he wished to call to the Court's attention. Appellant thereafter filed a supplemental brief. We address his contentions.

A. Bias/Lack of Impartiality

Appellant contends the trial court displayed bias or a lack of impartiality. Based on our review of the record, appellant was provided with a fair trial and the trial court complied with the law, displayed no bias, and

conducted itself in a manner that would promote public confidence in the impartiality of the judiciary.

B. Untimely Discovery

Appellant argues that he did not receive discovery from respondent in a timely manner due in part to restrictions imposed by his incarceration, and the court did not provide him any remedy. However, the court did offer appellant the option of waiving time for trial so he could have longer to review the discovery before trial commenced. Moreover, appellant has not established that any delay in receiving the discovery materials was prejudicial to his case—that is, that he would have received a more favorable verdict if he had obtained the prosecution's evidence earlier than he did. Nor has he established that the court erred in denying his motions to dismiss or to exclude evidence due to untimely discovery.

C. Exclusion of Witnesses

Appellant contends the court's exclusion of some of his witnesses was erroneous and prejudicial. First, he argues, the court excluded defense witnesses on the ground his offers of proof were insufficient without a "statement," while not requiring the prosecutor to provide such a statement as to prosecution witnesses. He does not establish a prejudicial abuse of discretion.[3]

Second, appellant contends the court was required under section 1054.5, subdivision (c) to exhaust other sanctions before prohibiting the

---

[3] Appellant contends he was entitled to statements from prosecution witnesses under section 1054.1. That statute pertains to discovery of statements previously given by witnesses; it does not require the prosecution to create a statement for each of its witnesses. He does not point to any record evidence that the prosecution failed to disclose witness statements.

7

witnesses' testimony. However, appellant does not describe what other sanctions would have been adequate.

Third, he claims his offers of proof met the requirements to "establish an affirmative defense" or "negate an element of a crime charged," citing section 866. That statute, however, applies to preliminary hearings. At any rate, the court did not err in concluding his offers of proof were insufficient. Appellant wanted the witnesses to provide evidence that the Oakland Police Department and "allied law enforcement" targeted him for political reasons during Berkeley mayoral campaigns in 2020 and 2016. He asserts "Defense Witness #2" would have testified to this targeting, "Defense Witness #3" was a lawyer offered as an expert witness to testify that appellant was targeted by the FBI and the Oakland Police Department in other matters, and "Defense Witness #4" was a schoolteacher who was involved in appellant's mayoral campaign. Appellant does not establish how the witnesses' testimony would have established any cognizable defense to the charges or negated an element of the charged crimes.

In any event, appellant acknowledges that another defense witness was allowed to testify to appellant's mayoral platform, political career, and the "causes for which he fights." He does not establish that more of the same would have changed the outcome of the trial.

Fourth, appellant argues that the court did not allow evidence of his good character, which was a predicate to the introduction of any prosecution evidence of his bad character under Evidence Code section 1102. He claims the absence of the evidence of his good character was prejudicial, and that such prejudice was shown by the fact that the court would later read letters from these witnesses (and others) and be persuaded to impose probation rather than prison. His argument is unavailing. The letters from those

individuals may have suggested to the trial judge that a more lenient punishment was in order, but that does not mean such evidence was relevant to whether he committed the crimes.

D. Speedy Trial

In the absence of a time waiver, section 859, subdivision (b) generally requires a preliminary hearing to be held in felony cases within 10 court days after arraignment. Appellant acknowledges case law that California's emergency rules during COVID provided a "good-cause" exception to the 10-day rule, but he argues such cases did not consider the question of "Medical Endangerment under the 8th amendment." He argues that he was "an Elder in his late 50s at the time of the trial, in a jail which experienced repeated outbreaks," and that should override the COVID good-cause exception. He fails to provide pertinent citations to the record or to legal authority to support his contentions.

E. Additional Arguments

Appellant asks us to examine "[i]mproper exclusion of key evidence," "[i]mproper denial of attempt to initiate a pitchess motion," "[p]rosecutorial misconduct," "[i]neffective assistance of (pre-trial) counsel," "[f]alse arrest," and "[v]iolation of first amendment rights to practice native religion, disrobing of an elder, demonization of drawing medicine wheels, and disrespect for native symbols and spiritual practices." (Bolding removed.) He has not provided pertinent citations to the record, citations to legal authority, or substantive argument.

We have conducted an independent review and find no arguable issues on appeal. There are no legal issues that require further briefing.

## III. DISPOSITION

The judgment is affirmed.

9

_____

WISEMAN, J. *

We concur.

_____

JACKSON, P.J.

_____

SIMONS, J.

*People v. Brown* / A163445

_____
\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10